**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**

FILED

2023 MAY 22 PM 1:58

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
ORLANDO, FL

|  |  |
|---|---|
| AHMED SHAIKH,<br><br>     Plaintiff,<br><br>            v.<br><br>ST. THOMAS UNIVERSITY INC.,<br>FOX NEWS NETWORK,<br>CITY OF MIAMI,<br>SUNSTONE SHIPS, INC. D/B/A,<br>HORR,SKIPP, & PEREZ,<br>CITY OF ORLANDO,<br>NORMAND LAW PLLC, a Florida Limited<br>Liability Company,<br>CF FITNESS, INC., a Florida Profit<br>Corporation,<br>PUBLIX SUPER MARKETS, INC., a Florida<br>Profit Corporation,<br>UNIVERSITY OF CENTRAL FLORIDA<br>RESEARCH FOUNDATION, INC.,<br>GRIFOLS USA, LLC, Florida Limited<br>Liability Company,<br>24 HOUR FITNESS USA, LLC , Foreign<br>Limited Liability Company,<br><br>               Defendants. | Civ. - -<br><br><br>**COMPLAINT**<br><br><br><br>JURY TRIAL DEMANDED |

1

Plaintiff Ahmed Shaikh, proceeding pro se, for his Complaint against all Defendants, alleges, on knowledge as to his own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.      This is a case about Individuals and entities in the City of Miami, the City of Orlando, and Fox News Network illegally wiretapping Plaintiff Ahmed's cellphone and laptop and disseminating remote access to these devices in gross violation of Ahmed's privacy rights.

2.      The illegal wiretapping began on or around October 20, 2022, when professors at St. Thomas University College of Law started wiretapping Ahmed's cellphone and laptop in coordination with the Miami Dade Police Department and the Miami Dade Police Department's Department of Homeland Security division. And later on, with the law firm Horr, Skipp, and Perez. The entities involved then disseminated remote access to Ahmed's devices to everyone in the local Miami community and installed listening devices and cameras in Ahmed's apartment at Midtown Aventura.

3.      Later, when Ahmed went back home to Orlando, Ahmed realized that the local police department and everyone in the local community, from Ahmed's gym—Fitness CF, to the coffee shops (e.g., Starbucks) and grocery stores (e.g., Publix), the students who attend the University of Central Florida (UCF) and the students who work out at the 24 Hour Fitness located by UCF to even the new law firm that Ahmed gained employment to (Normand PLLC) had been wiretapping his cellphone and laptop. What's worse is that the national media (e.g., Fox News network) and several other government officials have also been in on this criminal enterprise.

4.      The City of Orlando, via the Orange County Sheriff's, Office has also installed cameras and listening devices surreptitiously in Ahmed's home at 7940 Wandering Way, Orlando, Florida, 32836.

5.      This case is also about Fox News Network's illegal wiretapping of Plaintiff Ahmed's iPhone 11 cellphone and MacBook Pro laptop and using all of his oral, written, and searched communication as talking points on its shows on Fox News Network. On or about December 6, 2022, Ahmed noticed his communications were intercepted and used as talking points on Fox News Network's shows: The Five, Gutfeld, Tucker Carlson Tonight, Outnumbered, and Skip and Shannon: Undisputed.

6.      Finally, and more importantly, the illegal interception of Plaintiff Ahmed's devices violates both state and federal laws.

7.      The Defendant's actions violate Florida's wiretapping law, a "two-party consent" law. Specifically, Florida makes it a crime to intercept or record a "wire, oral, or electronic communication" in Florida unless all parties to the communication consent. *See* Fla. Stat. ch. 934.03. Ahmed never consented to the interception of his oral and electronic communications.

8.      The Defendant's actions are also in violation of the Electronic Communications Privacy Act (ECPA), which protects the privacy of electronic communications through: Title I: Wiretap Act prohibits the interception of electronic communications during transmission and the use of intercepted communications (18 U.S.C. §§ 2510 to 2523) (see Wiretap Act).

9.      Finally, Defendant's eavesdropping constitutes an intrusion upon seclusion right of privacy claim because Defendant's intentionally intruded into a place or matter in which Ahmed

has a reasonable expectation of privacy; and in a manner that is highly offensive to a reasonable person.

10.     Plaintiff Ahmed Shaikh seeks $100,000,000 and an injunction halting the further wiretapping of his devices and the destruction of any ability to remotely access Ahmed's devices by the individuals in this lawsuit and by members of the communities of Orlando and Miami and to whomever else the hackers have disseminated Ahmed's remote access to and any equitable or other relief this court deems just and proper.

## JURISDICTION

11.     This Court has jurisdiction over this action under 28 U.S.C. § 1331, in that this is a civil action arising under the Electronic Communications Act of 1986; Specifically, Title I of the ECPA Wiretap Act prohibits the interception of electronic communications during transmission and the use of intercepted communications (18 U.S.C. §§ 2510 to 2523) (see Wiretap Act) and Title II of the ECPA: Stored Communications Act (S.C.A.), protects electronic communications in storage (as opposed to communications in transit) (18 U.S.C. §§ 2701 to 2713) (see Stored Communications Act).

12.     Additionally, this Court has jurisdiction over this action over Defendant Fox News Network under 28 U.S.C. § 1332(a)(1), in that this is a civil action between Plaintiff, a citizen of Florida, and Defendant Corporation, with its state of incorporation in Delaware, and with its principal place of business in New York, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

13. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district and 28 U.S.C. §1391(b)(2), in that a substantial part of the property that is the subject of the action is situated in this district and 28 U.S.C. § 1391(b)(3), in that Defendants are subject to personal jurisdiction in this district for this action, and there is no other district in which the action may otherwise be brought.

## PARTIES

14.    **Plaintiff Ahmed Shaikh** is an individual who resides in Orlando, Florida. Ahmed is a former St. Thomas University College of Law in Miami, Florida, law student. Ahmed was in his third year when all events concerning this action took place. During the fall semester of his third year, this past October 2022, Ahmed's iPhone 11 and Macbook Pro laptop were wiretapped, and all of his oral, electronic, and camera activity was transmitted to the hackers. Specifically, the hackers have remote access to his devices and can control both his computer and phone from a remote location from multiple devices. They can take complete control of his devices, go through all the files on his computer, turn on the microphone and listen to all the conversations in the room, his car, or wherever he is, and turn on his webcam and spy on him.

15.    **ST. THOMAS UNIVERSITY INC.** is a 501(c)(3) non-profit corporation in Miami Gardens, Florida. St. Thomas University Inc. is referred to as St. Thomas University as it is a college institution of higher learning. St. Thomas University Inc. houses the College of Law, St. Thomas University College of Law. During Plaintiff Ahmed Shaikh's first semester in his third year of law school, fall of 2022, the professors at St. Thomas University College of Law worked

5

together amongst themselves and with the local police department's Department of homeland security division, which gave money to the university per its tax audit from 2017. The professors, along with the City of Miami officials, hacked Ahmed's cellphone and laptop and installed cameras and bugs in his apartment at Midtown Aventura, where he was living at the time, with the help of the office staff, which retain copies of keys to the apartment. These cameras and bugs were surreptitiously installed while Ahmed was visiting family in Orlando. Moreover, when Ahmed returned and obtained work as a law clerk at Horr, Skipp, and Perez, Ahmed discovered that the law firm had remote access to his devices and the cameras and bugs surreptitiously installed in his apartment.

16.    **SUNSTONE SHIPS, INC. D/B/A, HORR, SKIPP, & PEREZ** is a maritime law firm in Miami, Florida. Ahmed gained employment at Horr, Skipp, & Perez on or about December 5, 2022. Here, too, Ahmed noticed that they had access to his cell phone and laptop and everything Ahmed did in his apartment. They had cameras and bugs installed in Ahmed's apartment in Midtown Aventura in Miami, Florida, through the help of the Miami-Dade Police Department.

17.    When Ahmed interviewed with Horr, Skipp, and Perez, Perez was wearing a Miami Dolphins jersey, and Horr was wearing a Notre Dame jersey. They asked Ahmed if he liked to watch football. This was not out of genuine curiosity but rather because they watched Ahmed's YouTube search history, which featured Miami Dolphins football highlights, among other football highlights. This, among several other instances, led Ahmed to conclude that they had remote access not only to Ahmed's electronic devices but also to the cameras installed surreptitiously in Ahmed's apartment at Midtown Aventura.

18.    On his last day at the firm, Ahmed quit. When the office manager via text asked Ahmed why he walked out, Ahmed responded by raising the allegation that they had been wiretapping his cell phone and laptop and that it made him feel uncomfortable.

19.    The office manager, Laura, responded, rather than denying the hacking allegations, "It's best if you don't come back."

20.    When Ahmed called the front desk at the office at Midtown Aventura and asked about the hidden cameras, the call went straight to voicemail, and no one ever returned Ahmed's call regarding the matter. Ahmed called back three times to no avail. This was the first time that no one from the front desk returned a call after a voicemail had been left in Ahmed's entire year and a half of living at the apartment.

21.    **CITY OF MIAMI** is an incorporated municipality in Florida. During Ahmed's time working for Horr, Skipp, and Perez and still suspended from St. Thomas University Law, randomly, a detective from the Department of Homeland Security called Ahmed's dad and Ahmed.

22.    An individual named **Detective Klerman** called Ahmed and said he had to speak with him. And that Ahmed could not refuse or else he would find Ahmed. He asked for a 10minute conversation and stated that St. Thomas University College of Law sent him after Ahmed had posted on his LinkedIn exposing their crimes regarding the wiretaps.

23.    However, what's interesting is that he had no authority to come to visit Ahmed, and St. Thomas Law had no authority to send him based solely on LinkedIn posts.

24.    This was a coordinated hit job by St. Thomas University College of Law to get

Ahmed to withdraw, so they would face no criminal or civil liability for arbitrarily suspending Ahmed.

25.    And, at the same time, Ahmed's dad had been texting Ahmed about possible deportation and fearing the authorities after Dean Todd Clark and former Dean John Hernandez called him angrily, trying to get Ahmed to pull down his public posts about their illegal activities.

26.    Thus, because Ahmed's dad mentioned deportation, they sent someone from the Department of Homeland Security to scare Ahmed's parents and Ahmed into withdrawing.

27.    The detective gave away the wiretap when he said, "you can't mention churches," but Ahmed never mentioned churches in his LinkedIn posts, but Ahmed did say the church and St. Thomas are working together to get me out loud in his car.

28.    This proves that the Department of Homeland Security, St. Thomas University Inc., and Horr, Skipp, and Perez were all hacking Ahmed's cellphone and laptop and had cameras surreptitiously placed in Ahmed's apartment at Midtown Aventura.

29.    **CITY OF ORLANDO** is an incorporated municipality in central Florida. The Orlando Police Department, Orange County Sheriff's Office, and State Troopers Association all have access to Ahmed's cellphone and laptop and have access to cameras that they had installed at Ahmed's home at 7940 Wandering Way, Orlando, Florida, 32836. When Ahmed returned from Miami in late December 2022, Orlando Police, Orange County Sherriffs, and State Troopers pulled Ahmed over three times in a day and a half after returning.

30.    **NORMAND LAW PLLC** is a Florida Limited Liability Company operating as a

class action law firm in Orlando, Florida. Here too, the lawyers and workers had access to Ahmed's cellphone, laptop, and the cameras installed in Ahmed's Orlando home.

31.    Attorney Amy Judkins mentioned Pablo Escobar and his Hippo at the firm, but it had nothing to do with what was going on that day; it was only because Ahmed was listening to the Gucci Mane song "Pablo" about Pablo Escobar. She only said it to try to get at Ahmed.

32.    The senior partner at the firm, Ed Normand, emailed Ahmed about "neglected stepchildren" after he was mad at Ahmed for being late in a passive-aggressive email. This was only because he heard Ahmed say in his car, "I think I am adopted," after Ahmed's family was treating him poorly some weeks before Ahmed gained employment with the firm while Ahmed was set to start working there on February 20th. Even though he, himself, has stepchildren, his remark was directed to Ahmed for a very particular reason and because he had remote access to Ahmed's cellphone, just like Attorney Amy Judkins.

33.    **CF FITNESS, INC.**, is a Florida Profit Corporation that operates as a gym in Central Florida. Here, too, Ahmed noticed that the gym and all of its members had remote access to Ahmed's devices. If Ahmed mentioned something out loud in his car or watched something online, the next day, Ahmed would see it or something related via movies played on the big screen, songs played on the intercom, individual members: Blacks, Brazillians, and men or women with tattoos. The last straw was when a front desk employee said, "You have to be street smart and book smart," after seeing Ahmed's back and forth with a reckless driver the night before. So, he incorrectly assumed that Ahmed was not street-smart based on his illegal wiretap.

34.    **PUBLIX SUPER MARKETS, INC.** is a Florida Profit Corporation that operates as a grocery store in Florida. Also, everyone working would have access to Ahmed's devices in

the Miami and Orlando locations. If Ahmed ran out of toothpaste, Ahmed would notice that the toothpaste Ahmed ran out of would-be buy one get one free. If Ahmed were singing on his way to the grocery store, Ahmed would see that the sweeper at the front would be singing. On one occasion, an employee was laughing at Ahmed walking in based on something Ahmed had said on his way there.

35.    **UNIVERSITY OF CENTRAL FLORIDA RESEARCH FOUNDATION, INC.**, known as the University of Central Florida, is a public research university with its main campus in unincorporated Orange County, Florida. UCF also has nine smaller regional campuses throughout central Florida. It is part of the State University System of Florida. All students at UCF have remote access to Ahmed's laptop and cellphone and also to the hidden cameras in Ahmed's home at 7940 Wandering Way, Orlando, Florida, 32836, that were installed by men who came to Ahmed's house to install tiles in place of carpet and did so under the direction of the Orange County Sheriff's Office.

36.    In Ahmed's home at 7940 Wandering Way, there is a card from a specific Orange County Sherriff that Ahmed's parents sent him a pic of to try to intimidate him

37.    **24-HOUR FITNESS USA, LLC** is a Foreign Limited Liability Company that functions as a gym. Ahmed recently signed up for 24-Hour Fitness on March 31. During Ahmed's time working out there, Ahmed realized that everyone at that gym, too, through their behavior, was monitoring his cell phone and laptop. An example is when Ahmed was driving to the gym, Ahmed was ranting out loud and said, "I swear to God," then a member at the gym working out next to Ahmed kept saying, "I swear to God." He only said that because he heard Ahmed say it in the gym and was trying to act cute.

38.     Another example is when Ahmed was driving to the gym and listening to the song "It Was a Good Day" by Ice Cube, and Ahmed kept playing the music repeatedly. Ice Cube has a line that goes, "No barking from the dogs...." Then, at the gym, a gym member started barking very loudly at Ahmed. Finally, when Ahmed tried to go on the 2nd of May, Ahmed was denied entry because he had not paid his monthly dues, but his membership was still active, yet this was the first time Ahmed was denied access for being two days late on his payment. This happened because the employee who denied Ahmed's entry heard Ahmed stressed the importance of working out earlier that day during his job interview. These are just a few examples of the daily instances of wiretapping that Ahmed would encounter.

39.     **GRIFOLS USA, LLC** is a Florida Limited Liability Company, is a plasma donation center that provides individuals compensation in exchange for blood plasma. Recently, Ahmed went to the plasma center, and they kept trying to deny Ahmed the ability to donate, and the manager kept shouting from the back, "Type 2, Type 2," because they thought Ahmed had Type 2 diabetes. But they don't know this because they tested Ahmed for it, but rather because they have been wiretapping Ahmed's laptop and cellphone.

**Fox News Network**

40.     During his free time, Ahmed had been and still is an avid watcher of Fox News Network, which he watches on his MacBook Pro laptop and occasionally on his iPhone 11 via YouTube. Specifically, Ahmed watches the shows (1) The Five; (2) Gutfeld; (3) Tucker Carlson Tonight; (4) Outnumbered; (5) Fox & Friends; and (6) Skip and Shannon: Undisputed.

41.     Defendant Fox News Network, LLC ("Fox") has overseen America's most-watched cable news network for five years. The company was formed and is organized under the laws of

Delaware and has its principal place of business in New York. It is wholly owned by Fox Corporation, a Delaware corporation headquartered in New York. Fox operates the Fox News Channel, the Fox Business Channel, Fox News Radio, and Fox News Digital, which includes the fox.com, foxnews.com, and foxbusiness.com websites, Fox's social media accounts, and Fox's digital subscription services, such as Fox Nation, which it refers to collectively as "Fox News Media." The Fox News and Fox Business Channels are available in over 80 million American households, and Fox boasts that Fox News Media reaches 200 million people monthly.

42. Fox News also simulcasts its broadcasts, including through SiriusXM. In 2020, the Fox News Channel averaged over 3.5 million viewers during its primetime evening news programming and nearly 2 million daytime viewers.

43. Fox repeatedly hacked and still is hacking and utilizing remote access to Plaintiff Ahmed Shaikh's oral, electronic, or written material on his cellphone and laptop and including by broadcasting and rebroadcasting Plaintiff Ahmed Shaikh's spoken and written words, online search history, and notes and work-product through its on-air personalities Greg Gutfeld, Dana Perino, Jesse Watters, Jeanine Pirro, Jessica Tarlov, Harold Ford, Tucker Carlson, Harris Faulkner, Emily Compagno, Kayleigh McEnany, Ashley Strohmier, Todd Piro, Skip Bayless and Shannon Sharpe and their chosen guests..

44. The Five is an American panel talk show on Fox News Channel in which full-time hosts Greg Gutfeld, Dana Perino, Jesse Watters, Jeanine Pirro, and rotating hosts Jessica Tarlov, Geraldo Rivera, and Harold Ford Jr. discuss current stories, political issues, and pop culture. The one-hour show premiered on July 11, 2011, and airs live on weekdays from 5 pm ET (with a repeat of Friday's airing at 5 am. ET on Saturday mornings) unless breaking news coverage preempts.

45.    Gregory John Gutfeld (born September 12, 1964) is an American television host, libertarian political commentator, comedian, and author. He hosted the late-night comedy talk show, Gutfeld! And hosted a Saturday night edition of Gutfeld! It was called The Greg Gutfeld Show from May 2015 until March 2021, when it was announced that the show would transition to weeknights. Gutfeld is also one of five co-hosts and panelists on the political talk show The Five. Both of his shows air on the Fox News Channel. From 2007 to 2015, Gutfeld hosted the 3 AM series Red Eye, a late-night talk show that also aired on the Fox News Channel..

46.    Tucker Carlson was a Fox News personality and hosted Fox's Tucker Carlson Tonight. At all relevant times, Carlson was an agent for Fox. Carlson held Fox News' premier 8:00 p.m. primetime weekday slot, and Tucker Carlson Tonight was the second most-watched cable news program in 2020. Fox operated and controlled the @tuckercarlsontonight Instagram account, described in the account's profile as "[t]he official Instagram page for Tucker Carlson Tonight on Fox News. 8 p.m. EST." Fox frequently republishes shows and segments from Tucker Carlson Tonight on the @tuckercarlsontonight Instagram account.

47.    Outnumbered is an American daytime news and talk show on weekdays on Fox News at noon ET. Hosts Harris Faulkner, Emily Compagno, Kayleigh McEnany, and a rotating female panelist with one male guest panelist discuss the news and issues of the day.

48.    Fox & Friends First is a breakfast television show on Fox News. It airs every weekday at 4:00 am Eastern/1:00 am Pacific. The two-hour-long program hosted by current hosts Ashley Strohmier and Todd Piro serves as a pre-show to the network's flagship morning show, Fox & Friends.

13

49.    Skip and Shannon: Undisputed is an American sports and entertainment talk show starring Skip Bayless and Shannon Sharpe. The series premiered on Fox Sports 1 on September 6, 2016.

## FACTS

50.    Heinous. What would you do if you woke up one day and everyone watched and listened to everything you did everywhere you went? Well, that is precisely what happened to Plaintiff Ahmed. Ahmed has suffered severely over the past several months via the organized crime of law school professors, local police, and state court judges. Every single person and entity in this lawsuit and others have had remote access to Ahmed's laptop and cellphone, along with cameras and bugs secretly installed in his apartment at Midtown Aventura and his Home at 7940 Wandering Way by Orange County Sheriff's Office via workers who installed tiles in place of carpet at his Home. Ahmed has had to endure a lot. His legal education has been disrupted, he has been ostracized in his community, and he has been maligned by the national media wherever he goes. Specifically, Fox News Network, who also has access to his devices and the cameras in his room, not only malign his character but also uses his words, search history, and work product as talking points on their shows. Ahmed wants his life back. Ahmed wants this illegal spying and eavesdropping to stop. Ahmed wants to regain admission into law school. And Ahmed wants money damages for this pain and suffering and the defamation of his character by powerful and illegal forces.

51.    The events began to transpire in late summer 2022.

52.    During final exam time that summer of 2022, Ana Marrero went through Ahmed's backpack while testing for his final exam in Florida Constitutional Law, the same class Judge Hunter Davis taught. Again, this can be confirmed by checking the cameras in the office.

53.    Ana Marrero shared this information with **Anthony Musto**, Ahmed's Evidence professor, the following semester, fall 2022, and he later mentioned specific text messages on his home screen from that day.

54.    When Ahmed left the testing room, he noticed his backpack had been moved, so he asked Ana where she had put it. She went to the back and brought his backpack out..

55.    When he checked his cellphone, it had a text from his mom.

56.    Back to Professor Musto the next semester, he said, "I wonder what his mom will think when all the evidence comes out, and this is all on the morning newspaper.

57.    That had nothing to do with the lecture but was a subliminal dig toward Ahmed because he had seen or at least Ana told him that Ahmed's mom's text was on the home screen. This can be confirmed by watching the class Zoom videos.

58.    Professor Anthony Musto has connections with the media as he is a former assistant state attorney, per his comments regarding revealing Ahmed's alleged discretions to the media.

59.    During that same fall semester, Ahmed emailed **Lourdes Fernandez** (Lourdes

B. Fernandez is the Assistant Dean for the Office for Career Development at St. Thomas University College of Law) about his interest in attending a business conference she advertised via an email solicitation.

60.    After Ahmed expressed his interest in attending, Lourdes Fernandez said, "Maybe it's not for you."

61.    Ahmed told her he had seen this favoritism at law schools before, but he would nevertheless work harder to improve.

62.    Later, during the fall 2022 semester, a student named **Marcos Aguirre** asked Ahmed for his Apple computer charger. Ahmed gave him his Apple laptop charger and thought nothing of it. Marcos then walked away and returned the charger about an hour later.

63.    During this time, Marcos worked with **Professor Gregory Dickinson** and **Judge Hunter Davis** to hack Ahmed's laptop and cellphone via the charger cable. This can be confirmed by checking the St. Thomas University College of Law cameras.

64.    **Professor Gregory Dickinson** is a Computer Programmer from Stanford.

65.    **Judge Hunter Davis** is an admitted wiretapper. In class, on one occasion, Judge Hunter Davis shared an anecdote describing an instance of wiretapping. He said we pulled over a gentleman with a large amount of marijuana in his truck once, but the officer let him go. That same gentleman then calls the kingpin and explains what happened and how, remarkably, the police officer let him go even though he had several pounds of marijuana in his trunk. But as the judge explained, this is precisely what the officers wanted because they did not want the gentlemen working for the kingpin; they wanted the kingpin, which he called immediately after,

and that is exactly who they got because they were wiretapping both individuals' cellphones. Judge Hunter Davis's involvement in this whole scheme is undeniable.

66.    That is right about the time when the wiretapping started. This can be confirmed by checking the library and campus cameras at St. Thomas University College of Law.

67.    Then Ahmed noticed professors discussing things he searched online or had put in his google docs.

68.    For example, Professor **Jennifer Martin** mentioned, "For those of you using supplements, it might help to double-check." This is after she read Ahmed's Google docs and saw that he was using the "ABC'S of the UCC" Supplement.

69.    Moreover, **Judge Peter Lopez** mentioned "Fraud in the Inducement," which was directly from Ahmed's google docs notes for his payment systems class that he was accessing, but that had nothing to do with the lecture at hand.

70.    "Fraud in the Inducement" was not mentioned in Ahmed's class in payment systems, class notes, or PowerPoints.

71.    On Wednesday, October 19, 2022, Ahmed sent his professors Judge Hunter Davis and **Judge Daryl Trawick**, an email with the subject "Wiretap." He asked if they were wiretapping his cell phone and laptop, but they did not respond.

72.    Ahmed knowing that St. Thomas University College of Law was wiretapping his cellphone and laptop, had disconnected his SIM card, disabling calls to and from his cellphone.

73.    On Monday, October 24, 2022, at 9:52 a.m. **Dean John Hernandez** and **Dean**

17

**Todd Clark** emailed Ahmed to call them.

74.    On Monday, October 24, 2022, at 2:32 p.m., Ahmed emailed them that he would call them after he went to MetroPCS and reconnected his sim card and would return their call before 5 p.m. that day as he was in the process of reactivating his phone.

75.    Notably, Ahmed could not receive incoming calls at this time and told the deans he would call them back once his phone turned back on.

76.    Surprisingly, however, right when Ahmed reached his apartment gate at Midtown Aventura, the deans somehow knew his phone was back on and gave Ahmed a call at 3:00 p.m.

77.    Notably, Ahmed memorialized this obscene incident in his Google docs by writing, "Ambush Call: He called me right when I reached my gate on my way back from metro around 2:58 p.m. He had my cell access sites and a private investigator following me."

78.    On Tuesday, October 25, 2022, at 5:39 PM, Ahmed asked Dean Clark, "How did you know to call me when you did yesterday?" but received no response.

79.    Every time Ahmed raised the accusation that the University administrators and the City of Miami had been wiretapping his cellphone and laptop, Ahmed received no response.

80.    On October 26, 2022, St. Thomas University, College of Law, suspended Ahmed for violating Section 2.01 (G)(1) entitled "Serious Risk of Harm" after Ahmed emailed his professors about his belief that they had been wiretapping his cellphone and laptop and that it was inappropriate to discourage academic achievement by minimizing student results based off of using supplementary texts for classes. Specifically, that provision provides:

18

Section 2.01 (G)(1) "Serious Risk of Harm" 1. A student who, at the Dean of the College of Law's discretion, poses a risk of serious harm to the College of Law community or violates an order designed to protect the safety of others shall be immediately expelled.

81.    The Dean decided not to expel Ahmed but instead suspended Ahmed and offered an opportunity to obtain an independent psychiatric evaluation stating that Ahmed was not a risk of harm to himself or others. However, the Dean did not inform Ahmed what, if any, portion of his emails constituted a risk of harm.

82.    Nevertheless, to put the law school at ease, per his request, Ahmed obtained and submitted the independent psychiatric evaluation from a board-certified forensic psychiatrist who provided an assessment stating nothing was wrong with him and that no further psychiatric treatment was necessary. The school of law did not hold a hearing, and no specific allegations or complaints against Ahmed were made aware to him. Dean Todd J. Clark and **Dean Latoya I. Edwards** at the Student Affairs Office (SAO) at the College of Law at St. Thomas University, 16401 NW 37 Avenue, Miami Gardens, FL 33054, handled the disposition of this issue. The Student Affairs Office (SAO) contact is 305.623.2318.

83.    Around December 5, 2022, Ahmed obtained a job at Horr, Skipp, and Perez in Miami, Florida. Horr, Skipp, and Perez are a maritime law firm. Over there, Ahmed noticed that they, too, had been wiretapping his cellphone and laptop and had been coordinating with St. Thomas University College of Law to get Ahmed to withdraw voluntarily so that they would not have to face legal repercussions for suspending Ahmed arbitrarily, all the while wiretapping Ahmed's cellphone and laptop. To this day, Ahmed has not received an outright denial that they have been wiretapping Ahmed's cell phone and laptop or any response.

84.    Simultaneously, the Deans (Todd Clark and John Hernandez) had been having ex parte communications with Ahmed's father and were discussing his status as a student there without Ahmed's knowledge or consent. Dean Todd Clark began urging Ahmed's father to get Ahmed to withdraw, and Ahmed's father would, in turn, communicate that to Ahmed. When Ahmed asked his father to tell the Dean to speak with him directly, Ahmed would get no response from the Dean. Ahmed emailed the Dean to communicate with him directly on several occasions, but never heard back. Then the Dean gave Ahmed's father an ultimatum: to have Ahmed withdraw by December 14, 2022 or they would expel him. Ahmed decided to post his frustration on LinkedIn regarding the universities and the city's illegal wiretapping. Then Dean Clark, on behalf of himself and the university, called Ahmed's dad (still not Ahmed), fuming, and aggressively requesting that Ahmed take down his posts and withdraw by the deadline, or Ahmed would be expelled. On December 14, 2022, St. Thomas University College of Law expelled Ahmed via email letter alleging Ahmed violated the provisions 2.01 (E) and (F) and (G) for "Other Offenses" and "General Unfitness," and "Serious risk of harm." After this expulsion, Ahmed decided to tell the college his desire to accept their offer to withdraw in lieu of expulsion. They accepted and allowed Ahmed to withdraw. At the end of the semester, Ahmed withdrew.

85.    Significantly, after Ahmed posted on LinkedIn his frustrations regarding St. Thomas University's wiretapping with the help of the City of Miami via the Miami Dade Police Department and after Dean Clark messaged Ahmed's father demanding that Ahmed take down his posts, Ahmed's father texted him "Deportation," along with Dean Clark's demand that Ahmed take down his posts.

86.     Because the administration at St. Thomas University was reading Ahmed's texts with his father and saw that Ahmed's father feared deportation (which is illogical because Ahmed is a U.S. Citizen), sent Detective Klerman from the Miami Dade Police departments Department of Homeland Security arm to try to scare Ahmed into withdrawing, even though the detective had no authority to come to visit Ahmed because he lacked probable cause that a crime had been or is about to be committed solely off of LinkedIn posts.

87.     Even more significant and telling of the City of Miami and St. Thomas Universities wiretapping, is the fact that the detective that Detective Klerman sent to visit Ahmed at his apartment at Midtown Aventura stated, "When you threaten churches in your posts, people get worried." But Ahmed never mentioned churches in his posts on LinkedIn, but Ahmed did say churches out loud to himself during a rant with his phone in his car, which he drives with and that is connected to the Apple Car Play and that functions as a microphone.

88.     Horr, Skipp, and Perez were privy to all these facts as they worked with St. Thomas University to get Ahmed to withdraw.

89.     Recently, Ahmed discovered three individuals on his Microsoft Word complaint whom he did not share access to his device with: On April 20, 2023, while Ahmed was working on a separate complaint for Fox News Network, three unknown individuals were on the same document that Ahmed did not share the document with (1) "Leek" guest on pg. 1; (2) "Lyche" guest on pg. 1; (3) and "Redwood" guest on pg. 1.

90.     On April 21, 2023, Ahmed received a notification on his iPhone from Apple, while his phone was in lockdown mode, that an iCloud email account, edmien@icloud.com, attempted to collaborate using iCloud.

91.   Ahmed's family has admitted to having remote access to his devices, but they won't tell him who gave them access. This includes Ahmed's brother, whose login info was found saved on his devices.

92.   On April 28, 2023, Lockdown mode on Ahmed's phone blocked focused sharing, and the message by Apple stated: "Your focus won't be shared with other people when in lockdown mode."

93.   Attached hereto as Exhibit A is a true and correct copy of YouTube videos of Cybersecurity Expert Kevin Mitnick and his demonstrations of how hackers easily gain access to sensitive information by hacking by installing malicious software by taking control of a person's computer via using their charger cables, which is exactly what St. Thomas University did to gain access to Ahmed's devices via Marcos Aguirre and Judge Hunter Davis and his Virginia connections.

**Fox News Network**

94.   It's crazy how you can go from being Joe Blow to every Fox News Show using your voice, notes, and search history as talking points on their shows. But that is precisely what happened here. It started with St. Thomas University College of Law wiretapping Ahmed's cellphone and laptop around October 20, 2022, then transitioned into something more sinister.

95.   On or about December 6, 2022, Ahmed noticed Fox News Network hosts Judge Jeanine Pirro and Jesse Watters repeat precisely what he said out loud in his car to himself; that is,

Ahmed said, "I will burn these wiretappers to the ground, *legally* that is. Then the next day on The Five, Ahmed noticed hosts Judge Jeanine Pirro and Jesse Watters say "***legally***" with great emphasis and laugh about it hysterically as if it were some inside joke, but it had nothing whatsoever to do with the topic at hand.

96.    During the October 20 period onward, Ahmed, knowing that his iphone 11 was functioning as a microphone, began talking out loud in his car as if he were broadcasting to a radio or podcast audience. Still, Ahmed was broadcasting his frustration to an audience of loyal and fervent wiretappers thirsty for his turns of phrases and juicy quotes, and iconoclastic ideas to be used as talking points on their shows. Every day Ahmed would see The Five or Tucker Carlson Tonight to escape the wiretappers. Still, instead, Ahmed would end up infuriated that whatever he had said out loud in his car or searched online was being used as talking points on their shows, with a sprinkle of subliminal dissing. Ahmed memorialized his frustration by commenting on their YouTube comment section and threatening legal action.

97.    Attached is Exhibit B: Ahmed's comments on the various videos in which his words and search history are used as talking points on their shows and Ahmed's repeated requests for them to stop.

98.    Some recent examples from April 2023 include instances of Ahmed documenting on his Google Docs the examples of Fox News Network's wiretapping beginning on April 4, 2023; Ahmed wrote on his Google Docs at around 4:30 p.m. regarding the show Outnumbered "Expunged"--Harris Faulkner--this is after I wrote "expunged" on my google docs. Expunged had nothing to do with the topic. It's an irrelevant point to bring up, but she only said it to have something to say, which is legally related, but ultimately, she got it from my notes; and regarding

America's Newsroom, "Et cetera,"--Bill Hemmer said, "et cetera," I have been using et cetera in my Google Docs notes lately. I have never heard him say, et cetera. But do tell me if you have a video of him doing so. Then at 5 p.m. that same day, the hosts on the show were Harris Faulkner and Bill Hemmer rather than Dana Perino or Greg Gutfeld.

99.    Then, on April 5, 2023, Ahmed logged on to his Google Docs for that day for Tucker Carlson Tonight-- "Pyrrhic Victory"—Ahmed had searched Pyrrhic Victory online a few days prior.

100.    Then, on April 7, 2023, Ahmed logged in for The Five—"I knew Judge would wear a cross-chain after she overheard my rant in my car about the catholic archdiocese molesting children. That's further proof that they have remote access to my devices."

101.    Then on Monday, April 10, 2023, Ahmed logged in for The Five-- Jesse, long nails? Still hacking my cellphone and laptop wimp," after the topic of discussion on the show was about a transgender person with long nails, but Ahmed also had his nails grown out long for the first time in a while because Ahmed could not locate his nail cutter and Ahmed took a picture to prove it.

102.    Then on Friday, April 14, 2023, Ahmed logged in for The Five on the YouTube video titled: Jesse Watters: Hunter Biden's scandals are growing--Jessica Tarlov "If this, If that." Which is Directly from Ahmed's ChatGPT searches, which he saved to his Google docs.

103.    Moreover, after Ahmed's rant about local Starbucks employees giggling before he ordered his drink because they, too, have remote access to his devices in his car said out loud--the Fox News hosts started fake giggling excessively.

104.    Ahmed Added on his Google Docs for that day another instance regarding The Five-
-Topic: Shampoo—Greg Gutfeld mentioned shampoo after he saw Ahmed scratching his  ead.

105.    On April 18, 2023, Ahmed noted for Outnumbered –an "abomination"– Emily
Campagno stole that From Ahmed's Google Docs notes and that it was an SCA violation because
Ahmed typed then deleted this document.

106.    And for the same day Ahmed wrote on his Google Docs for  Gutfeld --Pulp Fiction
because after Ahmed watched Pulp Fiction the day before on the "Vile Eye," which is a channel
that does "analyzing evil" for villains of popular shows and movies on YouTube--Gutfeld used
Pulp Fiction in his segment for that night.

107.    On April 20, 2023, while Ahmed was working on the Fox News Network
complaint, three unknown individuals were on the same document that Ahmed did not share the
document with (1) "Leek" guest on pg. 1; (2) "Lyche" guest on pg. 1; (3) and "Redwood" guest on
pg. 1.

108.    On April 21, 2023, Ahmed received a notification on his iPhone from Apple, while
his phone was in lockdown mode, that an iCloud email account edmien@icloud.com, attempted to
collaborate using iCloud.

109.    On Thursday, April 27, 2023, Ahmed logged on for The Five: Greg Gutfeld spoke
about the benefits of getting an electric vehicle (EV) after Ahmed spoke about getting an EV
Mercedes the day before or earlier in the day.

110.    Additionally, on the same day, Thursday, April 27, 2023, Ahmed logged in for The Five for Jessica Tarlov: Electric Vehicle (EV) Boat after she mentioned not having an EV boat after Ahmed looked up boats and followed a page on Instagram the night before.

111.    On April 28, 2023, Lockdown mode on Ahmed's phone blocked focused sharing, and the message by Apple stated: "Your focus won't be shared with other people when in lockdown mode."

112.    Finally, on Saturday, May 6, 2023, the topic of The Five was "Singing in the Car." The day before, on May 5, 2023, Ahmed drafted a complaint for a different lawsuit, mentioning instances of him "singing in the car."

113.    Regarding that same instance, when asked what song Greg Gutfeld listens to while singing in the car, he stated, "NWA." Note this is after Ahmed listened to "F tha Police" by NWA earlier that day and before the show aired at 5 p.m.

114.    These examples are from last month and this month and do not include each day or show. These examples only include the videos Ahmed watched in his free time. If Ahmed were to get the whole amalgam of videos dating back to October 2022 to the current date, then Ahmed could paint a more comprehensive picture with day-by-day and video-by-video analysis of the wiretapping of both in real-time communications and stored communications, which would be sufficient for both Title I and Title II of the ECPA.

115.    That is, Fox News Network's actions violate both Title I: Wiretap Act, referring to actual time transmission of a communication, and Title II, the stored communications act (SCA) because they also accessed documents stored or destroyed on Ahmed's devices, which also include

past essays Ahmed has written for St. Thomas College of Law and would Suffice to violate copyright law as well.

116.    Fox News's actions also violate Florida's wiretapping statute--the Florida Security of Communications Act (FSCA) because Fox News Network both intercepted and used Ahmed's electronic and oral communications without his consent. *See* Fla. Stat. ch. 934.03.

117.    And Fox News Network's actions also constitute an intrusion upon seclusion of privacy claim because they intentionally intruded: into a place or matter in which Ahmed has a reasonable expectation of privacy and in a manner that is highly offensive to a reasonable person.

118.    Finally, to this date, Fox News Network still has not stopped its wiretapping and usage of Plaintiff Ahmed's words, electronic search history, and work product on its shows even after Ahmed warned and spoke with Fox's attorneys on numerous occasions to settle the matter to no avail..

119.    Attached as Exhibit B is a true and correct copy of instances where Ahmed commented on Fox News Network's shows posted on the online digital viewing website YouTube, acknowledged the hacking and wiretapping, and requested for them to stop on numerous occasions.

**Count I**

**Defendant's Violation of the Electronic Communications Privacy Act: Title I Wiretap Act**

120. Plaintiff incorporates paragraphs 1-119, above, as though fully set forth herein under this Claim.

121.    All Defendants unlawfully and intentionally intercepted or attempted to unlawfully intercept Plaintiff Ahmed's telephone calls, oral, written, or otherwise electronic communication without Plaintiff's consent in violation of Title 18 U.S.C. Chapter 119.

122.    Plaintiff was a party to the communications in which Defendants' unlawfully, intentionally, and without Plaintiff's consent, intercepted or attempted to intercept in violation of Title 18, U.S.C. Chapter 119.

123.    All Defendants unlawfully and intentionally used or divulged information that they knew or reasonably should have known was obtained by the unlawful interception of the communications in violation of Title 18, U.S.C. Chapter 119.

124.    All Defendants did not obtain a court order for these intercepts in violation of Title 18 U.S.C. Chapter 119; and

125.    By its acts and conduct, all Defendants violated other provisions of Title 18 U.S.C. Chapter 119.

126.    By reason of the foregoing, all Defendants are liable in the amount of $100,000,000, plus interest and costs.

**OR**

127.    Such preliminary and other equitable or declaratory relief as may be appropriate;

128.    Punitive damages;

129.    Actual damages and any profits made by Defendants' as a result of this illegal activity; and

130.    Statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.00; and,

131.    Other relief as the Court deems appropriate.

**Count II  Defendant's Violation of the Florida Security of Communications Act (FSCA)**

132.    Plaintiffs incorporates paragraphs 1-131, above, as though fully set forth herein under this Claim.

133.    All Defendants unlawfully and intentionally intercepted or recored Plaintiff's "wire, oral, or electronic communication" in violation of the Florida Security of Communications Act (FSCA) without Plaintiff's consent. *See* Fla. Stat. ch. 934.03.

134.    All Defendant's also used and disclosed the unlawfully intercepted communications while knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of the Florida Security of Communications Act (FSCA) without Plaintiff's consent. *See* Fla. Stat. ch. 934.03.

135.    Plaintiff at all times had in the case of "oral communications," under the FSCA "an actual subjective expectation of privacy, along with a societal recognition that the expectation is reasonable.

136.    The interception was not authorized by a law enforcement officer for purposes of obtaining evidence of a criminal act.

137.    By reason of the foregoing, all Defendant's are liable in damages in the amount of $100,000,000 plus interest and costs OR equitable or other relief sought.

**OR**

138.    Preliminary, equitable or declaratory relief; and

139.    Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher; punitive damages; and attorneys' fees.

### Count III  Defendant's Intrusion Upon Seclusion of Plaintiff's Privacy

140.    Plaintiff incorporates paragraphs 1-139, above, as though fully set forth herein under this Claim.

141.    All Defendant's intentionally intruded: into a place or matter in which the plaintiff has a reasonable expectation of privacy and in a manner that is highly offensive to a reasonable person.

142.    By reason of the foregoing, Defendants are liable in the amount of $100,000,000 plus interest and costs OR plaintiff seeks equitable or other relief sought.

**WHEREFORE**, Plaintiff Ahmed Shaikh requests judgment as follows:

A.    On Count One, awarding damages in favor of Plaintiff Ahmed Shaikh in an amount to be determined at trial, but in no event less than $33,333,333.3 plus interest and costs **OR** equitable or other relief sought.

B.    On Count Two, awarding damages in favor of Plaintiff Ahmed Shaikh in an amount to be determined at trial, but in no event less than $33,333,333.3 plus interest and costs **OR** equitable or other relief sought

C.     On Count Three, awarding damages in favor of Plaintiff Ahmed Shaikh in an amount to be determined at trial, but in no event less than $33,333,333.3 plus interest and costs **OR** equitable or other relief sought

Dated:

May 16, 2023

Orlando,
Florida

Respectfully submitted,

By: ***Ahmed Shaikh***

Proceeding *pro se*

7940 Wandering Way,
Orlando, Fl, 32836
(407) 576-3100

Ahmedshaikh3693@gmail.com

Ahmed Shaikh Proceeding pro]

## VERIFICATION

STATE OF FLORIDA  *FLORIDA*  )

) ss.:

ORANGE COUNTY  *ORANGE*  )

Ahmed Shaikh, being duly sworn, deposes and says that I am the Plaintiff Ahmed Shaikh in the case captioned AHMED SHAIKH V. St. Thomas University Inc. Et al. in the United States District Court for the Middle District of Florida Orlando Division and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on all relevant evidence regarding this matter, that includes but is not limited to, every video episode of the six Fox News Network Shows: The Five, Gutfeld, Tucker Carlson Tonight, Outnumbered, and Skip and Shannon: Undisputed, and internal communications with the network, be it emails, text messages, internal communication apps (i.e., Slack), documents, etc., which I asked to be preserved in an earlier email with opposing counsel and I believe them to be true.

*Ahmed Shaikh Declarant*
[PLAINTIFF'S NAME AND TITLE] Sworn

to me this *22* day of *APRIL*, 20*23*

*Hemwantee Satnaraine*

Notary Public

HEMWANTEE SATNARAINE
Notary Public, State of Florida
Commission# HH 313126
My comm. expires Sept. 18, 2026